UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL ROSSBACH,

               Plaintiff,               Case No. 2:16-cv-13912
                                                    District Judge Paul D. Borman
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 17) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 19)

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 17), **GRANT** Defendant's motion for summary judgment (DE 19),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

       Plaintiff, Randall Rossbach, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for social security disability insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

17), the Commissioner's cross motion for summary judgment (DE 19), Plaintiff's

reply (DE 20), and the administrative record (DE 12).

### A.    Background

Plaintiff filed his application for DI benefits on October 7, 2013, alleging

that he has been disabled since August 20, 2013.  (R. at 130-37.)  Plaintiff's

application was denied, and he sought a *de novo* hearing before an Administrative

Law Judge ("ALJ").  (R. at 109-12, 116-17.)  ALJ Patricia S. McKay held a

hearing on May 6, 2015 — at which Plaintiff was represented by counsel.  (R. at

35-92.)  The ALJ considered all of the evidence and determined that Plaintiff was

not disabled within the meaning of the Social Security Act.  (R. at 15-30.)  On

September 9, 2016, the Appeals Council denied Plaintiff's request for review.  (R.

at 1-3.)  Thus, ALJ McKay's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on November 13, 2016. (DE 1.)

### B.    Plaintiff's Medical History

Plaintiff's combined medical records generally span the period from

February 25, 2011 through April 17, 2015, although there are some records from

the Veterans Administration dating back to January 1994.  (R. at 260-1009.)  The

749 pages of medical records are mostly comprised of hospital and treatment

records and diagnostic tests, and include a February 13, 2014 consultative

examination by Nick Boneff, Ph.D.  These records will be discussed in relevant part as necessary below.

### C.    Hearing Testimony

Plaintiff and vocational expert Harry Cynowa testified at the May 6, 2015 hearing before ALJ McKay.  (*See* R. at 41-90.)  The hearing testimony will be discussed as necessary below.

### D.    The Administrative Decision

On June 22, 2015, ALJ McKay issued an "unfavorable" decision.    At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 20,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2013.  (R. at 17.)  At **Step 2**, the ALJ found that Plaintiff has the following severe

impairments:  degenerative joint disease of the left knee with torn ACL, torn

meniscus, and tendonosis; degenerative disc disease of the lumbar spine; tinnitus

and bilateral sensorineural hearing loss; alcohol dependence in early remission;

generalized anxiety disorder (GAD); anxiety disorder; depressive disorder; and

post-traumatic stress disorder (PTSD).  (R. at 17-18.)  At **Step 3**, the ALJ found

that Plaintiff does not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments.  (R. at 18-

21.)  Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has

the residual functional capacity ("RFC")[2] to:

> perform light work … except the claimant will need the opportunity to
> alternate between sitting and standing while engaged in work, as he
> desires.  Additionally, he can occasionally crouch, crawl, kneel, stoop,
> bend, and climb stairs.  He should avoid climbing ladders, ropes and
> scaffolds, as well as workplace hazards, such as moving machinery,
> and unprotected heights.  Lastly, the claimant is limited to work that is
> simple, routine, and repetitive, that is considered low stress (e.g., he is
> not required to make any complex decisions), and, that is self-paced
> rather than production-paced work.

(R. at 21-28.)  At **Step 4**, the ALJ concluded that Plaintiff is unable to perform any

past relevant work.  (R. at 28-29.)  At **Step 5**, the ALJ found that, considering

Plaintiff's age, education, work experience and RFC, there are jobs that exist in

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

4

significant numbers in the national economy that Plaintiff can perform.  (R. at 29-30.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff raises two issues.  First, he argues that the ALJ made an impermissible credibility finding and did not give proper consideration to his complaints of pain and mental health issues.  (DE 17 at 28-31.)  Second, he contends that the ALJ's RFC determination is flawed and that she "never factored in the full scope of [Plaintiff's] medical and mental conditions into her RFC determination." (*Id.* at 31-36.)  I will address each argument in turn.

### 1.    Plaintiff's Credibility

#### a.    Inconsistencies and lack of record support

Plaintiff argues that "the ALJ made an impermissible credibility finding relating to her [sic] consistent and medically supported complaints of pain [which] were not given deference." (DE 17 at 28-29.)  However, he fails to cite to any of the record evidence in support of this argument in his motion.  He instead broadly asserts that his testimony at the hearing was "consistent with information she [sic] provided to his doctors and explains her [sic] functional limitations which included the determined need for a cane." (*Id.* at 29.)  Plaintiff asserts that "the majority of the medical treatment was provided through the VA and they had determined that [Plaintiff] was disabled and attributed 80% of the disability attributed to active military service," and then simply contends:

> Judge McKay fails throughout the decision to discuss the need and
> side effects of both pain and psychiatric medication.  She further
> failed to properly discuss the findings made by the VA and
> incorporate rational reasons for finding an ability to perform "light"

> level employment given the objectively manifested chronic physical
> injuries and stated need to ambulate with a cane.  Judge McKay
> appears to discredit [Plaintiff's] credibility on the basis that he did not
> seek medical treatment although the VA treatment was all that [he]
> could afford and they found that in combination he was disabled.

(*Id.* at 30-31.)   That is essentially the entirety of Plaintiff's argument, along with

recitation of case law and regulations. However, there is essentially no application

of that law to the facts here, and no citation to any record evidence in support of

his contentions.  (*See id.* at 28-31.)  Courts in this Circuit have routinely found that

such perfunctory arguments are deemed waived, explaining that "it is not for the

court to search the record and construct arguments.  Parties must do that for

themselves."  *See Brenay v. Schartow*, --- F. App'x ---, 2017 WL 4005118, at *5

(6th Cir. Sept. 12, 2017) (collecting cases); *see also United States v. Dunkel*, 927

F.2d 955, 956 (7th Cir. 1991) (per curiam) (stating that a "skeletal argument" does

not preserve a claim and explaining that "[j]udges are not like pigs, hunting for

truffles buried in briefs").  "Our system in an adversarial one, and it is up to the

parties to spar with each other on each and every issue." *Brenay*, --- F. App'x ---,

2017 WL 4005118, at *5.  Leniently, however, I will briefly examine the

credibility issue on the merits.

I conclude that the ALJ's credibility assessment ─ which took into

consideration, *inter alia*, Plaintiff's statements in his function report, his hearing

testimony, relatively mild diagnostic reports, failure to adhere to recommendations

of his treating physicians, and inconsistencies between the medical record and Plaintiff's complaints (R. at 22-28) — is supported by substantial evidence. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. The ALJ's "assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008). It is for this reason that the ALJ's credibility findings have at times been characterized as "unchallengeable." *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113-14 (6th Cir. 2010); *see Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court ... may not review a determination of credibility. It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (alteration omitted). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

ALJ McKay thoroughly reviewed and recited Plaintiff's testimony and the medical record evidence and provided detailed reasons for discounting Plaintiff's testimony with respect to *each* of his impairments—his knee pain, back pain,

hearing impairment, and mental impairments.  (*See* R. at 22-25, 28.)  The ALJ also issued a considered review and analysis of the opinion evidence from Plaintiff's therapist, Michael Hinkson, the consultative examiner, Nick Boneff, Ph.D., and the State agency psychiatric consultant, Dr. Zahra Yousuf.  (R. at 25-27.)  ALJ McKay gave little weight to Mr. Hinkson's opinion "because it is in conflict with his own treatment records and from contemporaneous treatment records," gave great weight to Dr. Boneff's opinion because it is "based on his well-trained clinical observations and is overall consistent with the medical evidence of record," and gave some weight to Dr. Yousuf's opinion because "while he is not a treating or examining physician, his opinion is consistent with the findings of the undersigned and supported by [the] record as a whole."  (*Id.*)  Plaintiff has not challenged the ALJ's analyses of these opinions.  The ALJ then found that while "it is certainly expected that [Plaintiff] would have some limitations in his functioning, limitations that have been accommodated by, and reflected in, the above residual functional capacity," "his clinical examinations and other reports simply do not support his testimony and do not show a person incapable of performing work activities at a reduced range of the light level of exertion."  (R. at 28.)

Although Plaintiff broadly faults the ALJ for not providing sufficient specific reasons in support of her credibility determination, and generally refers to medication side effects and the VA's disability rating, he fails to provide any

focused challenge to the ALJ's findings and essentially ignores the ALJ's

extensive and considered analysis of the record evidence and his testimony, and the

inconsistencies in his subjective symptoms.  Contrary to Plaintiff's unsupported

assertion regarding medication side effects, the ALJ acknowledged that Plaintiff

testified at the hearing that his medication causes him to lack motivation (R. at 22,

64-65, 74), but noted that Plaintiff did not take any pain medication for his back

(R. at 23, 28, 358, 473), and that he "responded well to the prescribed anti-

depressant and anti-anxiety medication with no reported side effects" in August

2013. (R. at 25, 367.)  Plaintiff has failed to point to any record evidence to the

contrary or that the ALJ failed to consider, and therefore has failed to demonstrate

that the ALJ's analysis is not sufficient.  And, Plaintiff's passing reference to the

ALJ's consideration of his daily activities similarly fails to assert a viable

argument.  (DE 17 at 29; DE 20 at 1.)  As the Commissioner points out, the ALJ

did consider Plaintiff's daily activities in her decision (though not directly in her

credibility analysis) (R. at 20-21, citing R. at 291-226), and Plaintiff has wholly

failed to explain how any further discussion of these activities would have affected

the ALJ's credibility analysis.  It is well settled that "an ALJ can consider all

evidence without directly addressing in his written decision every piece of

evidence submitted by a party." *See Kornecky v. Comm'r of Soc. Sec.*, 167 F.

App'x 496, 508 (6th Cir. 2006) (internal quotations omitted) ("Nor must an ALJ

make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.").

### b.    Veterans' Administration Findings

Further, Plaintiff failed to cite to any record evidence with regard to his conclusory argument that, in finding that he could perform light level work, the ALJ "failed to properly discuss the findings made by the VA" and that he needed to use a cane.  (DE 17 at 30.)  The ALJ's decision reveals a very thorough and considered review and analysis of the record evidence, including the extensive records from the Veteran's Administration, relating to each of his impairments, including his knee pain and back pain.  (R. at 22-28.)  Further, the ALJ expressly recognized that the vocational expert testified at the hearing that the same identified jobs would be available, in the same numbers, if the individual needed to use an assistive device for walking.  (R. at 30, 87.)  Plaintiff simply does not acknowledge this. Plaintiff also fails to cite to any specific finding by the ALJ when he broadly asserts that the ALJ "appears to discredit" Plaintiff's credibility on the basis he did not seek medical treatment and that the VA was all he could afford.  (DE 17 at 30-31.)  Contrary to Plaintiff's unsupported assertion, the ALJ did not fault Plaintiff for "only" seeking treatment at the VA, but instead specifically noted, *inter alia*, that Plaintiff was unable to continue treatment with his therapist, Mr. Michael Hinkson, after June 2014 due to insurance limitations,

and thereafter sought mental health treatment at the VA instead, with treatment once every three months.  (R. at 25, 28, 574.)  Plaintiff's broad challenge is simply insufficient to sustain his burden to demonstrate that the ALJ's credibility determination is not supported by substantial evidence.  *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e decline to formulate arguments on [claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record" to find if there is any evidence inconsistent with the ALJ's decision); *see also White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 850 (6th Cir. 2010) ("perfunctory" and "nebulous" argument renders an issue forfeited).

Further, with regard to Plaintiff's reference to the 80% disability rating made by the VA in April 2015,[3] it is well settled that the ALJ was not bound to accept the disability rating made by the VA.  *See Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013) (stating the VA's disability rating is entitled to consideration, but the ALJ is not required to give it any specific weight); *Mason v. Comm'r of Soc. Sec.*, No. 15-14300, 2017 WL 1018148, at *2 (E.D. Mich. Mar. 16, 2017) (holding the ALJ properly considered the VA records and the disability

---

[3] In April 2015, the VA assessed a 10% disability rating for Plaintiff's left knee instability and 10% for left knee patellar tendonitis; a 30% disability rating for PTSD with associated anxiety and depressed mood; a 20% disability rating for his back impairment; a 10% rating for hypertension; and a 0% disability rating for bilateral hearing loss but 10% for tinnitus, for a total disability rating of 80%.  (R. at 184-94.)

13

rating, referencing both in his decision, yet stating that he is not bound by the VA's

determination).  As the regulations make clear:

> A decision by … any other governmental agency … about whether
> you are disabled … is based on its rules and is not our decision about
> whether you are disabled….  We must make a disability …
> determination based on social security law.  Therefore a determination
> made by another agency that you are disabled … is not binding on us.

20 C.F.R. § 404.1504.  The issue of disability is one expressly reserved to the

Commissioner.  20 C.F.R. § 404.1527(d)(1).  ALJ McKay plainly considered the

VA records and the disability rating, along with "all the evidence in the case record

that may have bearing on the decision of disability," and did not wholly discount

that rating but "afford[ed] it little significance."  (R. at 27.)  Plaintiff fails to

demonstrate that this consideration was insufficient, particularly in light of the

VA's concurrent determination that Plaintiff was not entitled to "individual

unemployability" because "the evidence does not show that you are unable to

secure or follow a substantially gainful occupation as a result of service-connected

disabilities." (R. at 188.)

Accordingly, I find that the ALJ's credibility determination is supported by

substantial evidence.

## 2.    The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC is flawed and fails to support a finding

of disability at Step 5 of the sequential analysis.  (DE 17 at 31.)  Initially, to the

extent Plaintiff purports to frame this as a challenge to the ALJ's Step 5

determination, because the hypothetical posed to the vocational expert in this

matter is essentially identical to the RFC, this is in reality a "veiled attack" on the

ALJ's underlying RFC finding.  *See Kirchner v. Colvin*, No. 12-CV-15052, 2013

WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is

a veiled attack on the ALJ's underlying RFC finding" because "this is not a

scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately

imposed"); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)

("To require the Commissioner to prove a claimant's RFC at step five is essentially

to partially shift the burden of proof required of a claimant at step four to the

Commissioner.").

Turning to the RFC assessment, a plaintiff's RFC is "the most [he] can still

do despite the physical and mental limitations resulting from [his] impairments."

*Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20

C.F.R. §§ 404.1545(a), 416.945(a).  The determination of a claimant's RFC is an

issue reserved to the Commissioner and must be supported by substantial evidence.

20 C.F.R. §§ 404.1527(e), 416.927(e).  "'ALJs must not succumb to the temptation

to play doctor and make their own independent medical findings.'"  *Simpson v.*

*Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation omitted).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).     In
> assessing RFC, the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or
> an equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record. The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the

ALJ '"need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record."' *Id.*

(citations omitted).

　　　Plaintiff argues, without any support, that the ALJ "never factored the full

scope of her [sic] medical and mental conditions into her RFC determination."

(DE 17 at 31.)[4]  This argument asks the Court, in essence, to reweigh the evidence.

---

[4] Plaintiff's counsel's repeated use of a female pronoun for his male client (DE 17
at 29 (x2) & 31) is indicative of a "copy and paste" style of briefing, where canned
arguments are pulled from prior briefs in other cases.  One would hope that an
attorney would give enough attention to the details of a case so as to try to at least

This, the Court cannot do. "Our task is not to reweigh the evidence. That is solely the province of the Secretary." *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982). However, as explained above, the ALJ addressed the record evidence relating to each of Plaintiff's physical and mental impairments, and explained her reasons for not fully crediting his statements with respect to each impairment, in turn. (R. at 22-28.) The ALJ explained that she considered Plaintiff's subjective complaints and other allegations, as well as the objective medical findings and the reports of the State agency medical consultants and other treating, examining, and non-examining medical sources, and she reasonably found Plaintiff's testimony inconsistent with the relatively mild diagnostic findings and objective reports. (R. at 28.) A review of the ALJ's decision demonstrates that she sufficiently '"articulate[d] how the evidence in the record supports the RFC determination, discuss[ed] the claimant's ability to perform sustained work-related activities, and explain[ed] the resolution of any inconsistencies in the record."' *See Delgado*, 30 F. App'x at 547; *see also Kornecky*, 167 F. App'x at 508 ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).

Plaintiff makes a scattershot attack on the ALJ's RFC determination that fails for numerous reasons. First, his unsupported contention that the ALJ

be aware of who is being represented. But this lack of attention to detail is, unfortunately, consistent with the lack of specificity in the arguments.

"summarily rejected [Plaintiff's] claim of physical injuries and cognitive dysfunction" (DE. 17 at 32) is patently baseless and belied by the ALJ's thorough and considered analysis of Plaintiff's testimony and the record evidence. (*See* R. at 22-28.) A claimant must do more than show she is severely impaired; the impairment must result in functional limitations. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011). And, the burden of proving RFC is on Plaintiff. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1991). Plaintiff also broadly complains that the ALJ improperly referred to "decreased frequency of treatment" as indicative that Plaintiff's physical and mental impairments were less than claimed, and assigned "little significance" to the VA award of disability benefits. (DE 17 at 32.) However, as explained above, the ALJ did not fault Plaintiff for "only" seeking treatment at the VA, but instead noted, among many other things, that Plaintiff was unable to continue treatment with Mr. Hinkson after June 2014 due to insurance limitations, and thereafter sought mental health treatment at the VA instead *once every three months*, "suggesting an improvement in his condition since treating with Mr. Hinkson on *a bi-weekly basis*." (R. at 25, 28, 574) (emphasis added). Plaintiff's unfocused challenge to the ALJ's RFC determination is simply insufficient. Further, as discussed above, the ALJ properly considered the VA records and the disability rating, along with "all the evidence in the case record that may have bearing on the decision of

18

disability." (R. at 27.) She did not wholly discount that disability rating, but "afford[ed] it little significance[,]" as she was entitled to do. (*Id.*) *See Ritchie,* 540 F. App'x at 510. Plaintiff fails to demonstrate that this consideration was insufficient, particularly in light of the VA's concurrent determination that Plaintiff was not entitled to "individual unemployability" because "the evidence does not show that you are unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." (R. at 188.) Ironically, giving *greater weight* to the VA determination may have actually *strengthened* the ALJ's reasons for denying disability.[5]

Plaintiff also faults the ALJ for not explicitly addressing a January 2014 "Consult Request" from VA physician Dr. Hadied who wrote, "I have established that the patient is experiencing moderate to severe psychiatric symptoms beyond the scope of treatment in the Behavioral Health Team." (DE 17 at 33, citing R. at 677.) However, the ALJ did explicitly recognize that Plaintiff was evaluated at the VA in January 2014 in conjunction with the consult request, and upon examination, that Plaintiff was fully alert and oriented, cooperative, with vague

---

[5] VA records from December 11, 2013, four months post onset date, describe Plaintiff as having "excellent legs," "good quads" and being a "big strong man." Range of motion in his left knee is described as "full" and "stable," although with "mild laxity anteriorly" and "point tenderness over the medial collateral ligament on the medial side of the knee." A neurovascular exam of his leg found it to be "entirely within normal limits" although he walks with an "antalgic limp." It is noted that he "feels better with a cane in his hand." (R. at 289.)

speech at times, his mood was anxious and congruent with his affect, his thought

process and content were normal, and his insight and judgment were fair.  (R. at

26, 872-75.)  Plaintiff fails to offer any argument as to how the "Consult Request"

impacts his RFC determination and imposes additional functional limitations not

listed in Plaintiff's RFC.

Similarly, Plaintiff's contentions that the RFC "improperly discounted the

non-exertional limitations" and improperly excluded the need to lay down to

relieve pain are without merit.  The ALJ's RFC assessment included postural,

environmental, and mental limitations in addition to strength limitations.  (R. at

21.)  Plaintiff does not specify in his motion what non-exertional limitation he

complains about, and that argument can be deemed waived.  *See Brenay*, --- F.

App'x ---, 2017 WL 4005118, at *5 (declining to consider a perfunctory

argument).  In his reply brief, Plaintiff cites to the VA disability rating (addressed

above) and to "mental health limitations which included suicidal ideation with the

administration of psychiatric and narcotic medications."  (DE 20 at 2.)  The only

record he cites is his therapist's April 2014 letter noting a "poor" prognosis and the

need for more intensive psychiatric treatment.  (*Id.*, citing R. at 569-70.)  However,

the ALJ expressly considered that record evidence, noted that as a therapist, Mr.

Hinkson's letter is viewed as evidence from an "other source" rather than a

"medical opinion" from an "acceptable medical source," and determined that it is

entitled to little weight because it is "in conflict with his own treatment records and

from contemporaneous treatment records." (R. at 25-26.) The ALJ did not wholly

ignore this record evidence, and indeed limited Plaintiff to work that is simple,

routine and repetitive, low stress and self-paced rather than production-paced

work. (R. at 21.)[6]

Further, to the extent Plaintiff could be deemed to be complaining about his

hearing impairment (because he underlined "RFC with impairments affecting

hearing or speech" in the quoted SSR 96-8p guidance regarding such impairments

(*See* DE 17 at 34)), the ALJ properly reviewed the record evidence which showed

---

[6] Plaintiff also points to a GAF of 30; however, the Sixth Circuit held in *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) that:

> The [Global Assessment Functioning] score is a subjective determination that represents 'the clinician's judgment of the individual's overall level of functioning. We have previously held that the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination.
>
> Moreover, the Commissioner has declined to endorse the [Global Assessment Functioning] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [Global Assessment Functioning] scores have no direct correlation to the severity requirements of the mental disorders listings. Accordingly, we have affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower. *See, e.g., Smith v. Comm'r of Soc. Sec.,* No. 02–1653, 2003 WL 22025046, 74 Fed.Appx. 548 (6th Cir. Aug. 27, 2003) (Global Assessment Functioning score of 48); *Nierzwick v. Comm'r of Soc. Sec.,* 7 Fed.Appx. 358 (6th Cir.2001) (Global Assessment Functioning score of 35); *Thurman v. Apfel,* 211 F.3d 1270 (6th Cir.2000) (Global Assessment Functioning score of 50).

Case 2:16-cv-13912-PDB-APP ECF No. 21, PageID.1152 Filed 02/06/18 Page 22 of 25

that "the claimant was fitted for bilateral hearing aids, which he reported worked well indicating that normal speech was comfortably loud and loud noises were not uncomfortable," concluded that "[g]iven that the claimant reported that his hearing aids helped his hearing loss, this impairment may not be as severe as alleged," and accordingly found that no limitations were warranted. (R. at 24, 28, 340-41.) Plaintiff points to no evidence to the contrary. In addition, Plaintiff cites to no medical or record evidence in support of a need to lay down to relieve pain, much less explain why the ALJ erred in not including that limitation in the RFC (DE 17 at 35), and that argument is therefore waived. *See Brenay*, --- F. App'x ---, 2017 WL 4005118, at *5.

Finally, Plaintiff argues that the RFC did not adequately account for his "moderate" deficiencies in the ability to maintain concentration, persistence or pace, citing, without any analysis, *Edwards v. Barnhart*, 383 F.Supp.2d 920 (2005.)[7] While the Court in *Edwards* did hold that the ALJ's finding that the claimant could perform "simple, routine, unskilled work" did not—by itself— adequately account for her moderate limitations in concentration, persistence and

---

[7] Plaintiff also cites to *Bankston v. Commissioner of Social Security*, 127 F.Supp.2d 820 (E.D. Mich. 2000), for the proposition that "moderate" has been defined as 50% of the time. (DE 17 at 36.) However, the *Bankston* court actually addressed the definition of "often" as used in the Psychiatric Review Technique Form (PRTF), which uses a 5-category scale (never, seldom, often, frequent, and constant), and defined "often" as 50% of the time. *Bankston*, 127 F.Supp.2d at 827.

pace *in that case*, multiple courts have since held that *Edwards* did not establish a bright-line rule that a limitation to simple or unskilled work can never account for moderate limitations in concentration, persistence or pace.  *See, e.g., Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence, and pace."); *Kelly v. Comm'r of Soc. Sec.*, Case No. 2:15-cv-12326, 2016 WL 8115402, at *6 (E.D. Mich. July 22, 2016) (collecting cases), *report and recommendation adopted*, 2016 WL 4868532 (E.D. Mich. Sept. 15, 2016).  Rather, the court must look to the record as a whole and determine if substantial evidence supports the ALJ's RFC.  *See Kelly*, 2016 WL 8115402, at *6.  Here, the ALJ not only limited Plaintiff to "simple, routine and repetitive" work, but also to work that is "considered low stress (e.g., he is not required to make any complex decisions), and, that is self-paced rather than production-paced."  (R. at 21.)  Plaintiff wholly fails to explain how these limitations are insufficient to account for his credible impairments.  And, Plaintiff's assertion that "all competitive employment would be precluded if an individual was off task for more than 20% of the time" is unavailing as he fails to identify any evidence supporting such a limitation.

In sum, the conclusions the ALJ reaches are within the "zone of choice" provided those in her position, *see Blakley*, 581 F.3d at 406 (quoting *Mullen v.*

*Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)), and the RFC assessment is supported by substantial evidence.

### G.    Conclusion

The ALJ's opinion is supported by substantial evidence and devoid of harmful legal error. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 17), **GRANT** Defendant's motion for summary judgment (DE 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

24

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 6, 2018      s/Anthony P. Patti
                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 6, 2018, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Case Manager for the
                                      Honorable Anthony P. Patti